13-3088-cv
*Floyd v. City of New York*
13-3123-cv
*Ligon v. City of New York*
14-2829-cv, 14-2848-cv
*Detectives' Endowment Ass'n, Inc. v. Floyd*
14-2834-cv
*Patrolmen's Benevolent Ass'n v. Ligon*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2014
Nos. 13-3088-cv, 13-3123-cv, 14-2829-cv, 14-2848-cv, 14-2834-cv

DAVID FLOYD, ET AL.,
individually and on behalf of all others similarly situated,
*Plaintiffs-Appellees*,

*v.*

CITY OF NEW YORK,
*Defendant-Appellant.**

JAENEAN LIGON,
individually and on behalf of her minor son, J.G.,
JACQUELINE YATES, ET AL.,
individually and on behalf of a class of all others similarly situated,
*Plaintiffs-Appellees*,

---

* By stipulation, dated March 8, 2013, the parties withdrew all claims with prejudice against the individual defendants in *Floyd v. City of New York*. Accordingly, the Clerk of the Court is directed to amend the official captions in Nos. 13-3088, 14-2829, and 14-2848 to conform with the caption above.

*v.*

CITY OF NEW YORK, ET AL.,
*Defendants-Appellants.*

─────────

DETECTIVES' ENDOWMENT ASSOCIATION, INC., ET AL.,
*Appellants-Putative Intervenors,*

*v.*

DAVID FLOYD, ET AL.,
*Plaintiffs-Appellees,*

CITY OF NEW YORK,
*Defendant-Appellee.*

─────────

PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK,
INC., ET AL.,
*Appellants-Putative Intervenors,*

*v.*

JANEAN LIGON, ET AL.,
*Plaintiffs-Appellees,*

CITY OF NEW YORK, ET AL.,
*Defendants-Appellees.*

─────────

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: OCTOBER 15, 2014
DECIDED: OCTOBER 31, 2014

Before: WALKER, CABRANES, and PARKER, *Circuit Judges*.

These appeals present the important question of whether public-sector unions may intervene into a litigation where the actual parties to that litigation, including a newly-elected mayoral administration, have agreed to a settlement. The intervenors in this case, a group of police unions, endeavored to challenge the ruling of United States District Judge Shira Scheindlin that the City of New York's ("City") "stop-and-frisk" policy was carried out in a discriminatory manner, as well as her imposition of various reforms to that policy. We previously ordered these cases to be reassigned from Judge Scheindlin to another district judge. The case was reassigned to United States District Judge Analisa Torres who, in a July 30, 2014 decision, denied the unions' motions to intervene in these cases. The unions appealed this decision and also moved to intervene in the underlying appeals before our Court. With a new mayoral administration elected to office, the City entered into a settlement with plaintiffs pursuant to which plaintiffs will not oppose a motion by the City to terminate the District Court's jurisdiction after a period of five years if the City can show

3

substantial compliance with the reforms contained in Judge Scheindlin's remedial order. The City therefore opposes the unions' motions, moves to voluntarily dismiss its appeals on the underlying merits, and requests, with plaintiffs' consent, expedited issuance of the mandate to begin the remedial process.

We hold that the police unions' motions to intervene are untimely and do not assert an interest that the law seeks to protect. The unions knew, or should have known, of their alleged interests in these controversial and public cases well before they filed their motions in September 2013. For years now, "stop-and-frisk" has been the subject of extensive public filings and intense media scrutiny. Whatever the merit of the unions' claim that Judge Scheindlin's rulings were incorrectly premised "upon statistical evidence purporting to place 4.4 million stops at issue," allowing the unions to revive a now-settled dispute by intervening at this late juncture would substantially prejudice the existing parties and unduly encroach upon the City's inherent discretion to settle a dispute against it. In other words, granting the unions' motions in the wake of the November 2013 mayoral election would essentially condone a collateral attack on the democratic process and could erode the legitimacy of decisions made by the democratically-elected representatives of the people.

Furthermore, the police unions' interests in their members' reputations and collective bargaining rights are, as a matter of law, too remote from "the subject of the action" to warrant intervention as a "party." We stress that our holding is limited to the particular

and highly unusual circumstances presented here and should in no way be construed to encourage premature intervention in cases of public concern where government defendants have discretion to settle.

Accordingly, Judge Torres's July 30, 2014 decision is **AFFIRMED** as being within her discretion, the police unions' motions to intervene in the appeals are **DENIED**, the City's motion for voluntary dismissal of the appeals with prejudice is **GRANTED**, and the causes are **REMANDED** for such further proceedings before Judge Torres as may be appropriate in the circumstances. The mandate shall issue seven days from the date of the filing of this opinion.

––––––––––

> BAHER AZMY (Darius Charney, Center for Constitutional Rights, New York, NY; Philip A. Irwin, Eric Hellerman, Gretchen Hoff Varner, Covington & Burling, LLP, New York, NY; Jonathan C. Moore, Joshua S. Moskovitz, Beldock, Levine & Hoffman, LLP, New York, NY, *on the brief*), Center for Constitutional Rights, New York, NY, *for Floyd Plaintiffs-Appellees*.
>
> ALEXIS KARTERON (Christopher Dunn, Jordan Wells, New York Civil Liberties Union, New York, NY; Mariana Kovel, The Bronx Defenders, Bronx, NY; Juan Cartagena, LatinoJustice PRLDEF, New

5

York, NY; J. McGregor Smyth, Jr., New York Lawyers for the Public Interest, New York, NY; John A. Nathanson, Jeffrey J. Resetarits, Shearman & Sterling LLP, New York, NY, *on the brief*), New York Civil Liberties Union, New York, NY, *for Ligon Plaintiffs-Appellees.*

RICHARD DEARING, Assistant Corporation Counsel (Deborah A. Brenner, Fay Ng, Kathy Park, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for City of New York.*

JOSEPH A. DIRUZZO, III (Jeffrey J. Molinaro, *on the brief*), Fuerst Ittleman David & Joseph, PL, Miami, FL, *for Detectives' Endowment Association, Inc., Lieutenants Benevolent Association of the City of New York, Inc., New York City Police Department Captains Endowment Association.*

ANTHONY P. COLES (Courtney G. Saleski, *on the brief*), DLA Piper, New York, NY, *for Sergeants Benevolent Association.*

STEVEN A. ENGEL (Edward A. McDonald, James M. McGuire, Elisa T. Wiygul, *on the brief*), Dechert LLP, New York, NY, *for Patrolmen's Benevolent Association of the City of New York, Inc.*

James Reif, Gladstein, Reif & Meginniss, LLP, New York, NY, *for Amici Curiae Grand Council of Guardians, Inc., National Latino Officers' Association, and 100 Blacks in Law Enforcement Who Care.*

David B. Rankin, Rankin & Taylor, PLLC, New York, NY, *for Amici Curiae Communities United for Police Reform, et al.*

Jonathan Romberg, Seton Hall University School of Law, Center for Social Justice, Newark, NJ, *for Amici Curiae Law Professors.*

Jennifer Levy, Office of the Public Advocate, New York, NY, *for Amici Curiae Public Advocate for the City of New York and Members of the New York City Council.*

PER CURIAM:

These appeals present the important question of whether public-sector unions may intervene into a litigation where the actual parties to that litigation, including a newly-elected mayoral administration, have agreed to a settlement. The intervenors in this case, a group of police unions, endeavored to challenge the ruling of United States District Judge Shira Scheindlin that the City of New York's ("City") "stop-and-frisk" policy was carried out in a

7

discriminatory manner, as well as her imposition of various reforms to that policy. We previously ordered these cases to be reassigned from Judge Scheindlin to another district judge. The case was reassigned to United States District Judge Analisa Torres who, in a July 30, 2014 decision, denied the unions' motions to intervene in these cases. The unions appealed this decision and also moved to intervene in the underlying appeals before our Court. With a new mayoral administration elected to office, the City entered into a settlement with plaintiffs pursuant to which plaintiffs will not oppose a motion by the City to terminate the District Court's jurisdiction after a period of five years if the City can show substantial compliance with the reforms contained in Judge Scheindlin's remedial order. The City therefore opposes the unions' motions, moves to voluntarily dismiss its appeals on the underlying merits, and requests, with plaintiffs' consent, expedited issuance of the mandate to begin the remedial process.

We hold that the police unions' motions to intervene are untimely and do not assert an interest that the law seeks to protect. The unions knew, or should have known, of their alleged interests in these controversial and public cases well before they filed their motions in September 2013. For years now, "stop-and-frisk" has been the subject of extensive public filings and intense media scrutiny. Whatever the merit of the unions' claim that Judge Scheindlin's rulings were incorrectly premised "upon statistical evidence purporting to place 4.4 million stops at issue," allowing the unions to revive a now-settled dispute by intervening at this late

juncture would substantially prejudice the existing parties and unduly encroach upon the City's inherent discretion to settle a dispute against it. In other words, granting the unions' motions in the wake of the November 2013 mayoral election would essentially condone a collateral attack on the democratic process and could erode the legitimacy of decisions made by the democratically-elected representatives of the people.

Furthermore, the police unions' interests in their members' reputations and collective bargaining rights are, as a matter of law, too remote from "the subject of the action" to warrant intervention as a "party." We stress that our holding is limited to the particular and highly unusual circumstances presented here and should in no way be construed to encourage premature intervention in cases of public concern where government defendants have discretion to settle.

Accordingly, Judge Torres's July 30, 2014 decision is **AFFIRMED** as being within her discretion, the police unions' motions to intervene in the appeals are **DENIED**, the City's motion for voluntary dismissal of the appeals with prejudice is **GRANTED**, and the causes are **REMANDED** for such further proceedings before Judge Torres as may be appropriate in the circumstances. The mandate shall issue seven days from the date of the filing of this opinion.

## BACKGROUND

On January 8, 2013, United States District Judge Shira A. Scheindlin entered a preliminary injunction against defendants in *Ligon v. City of New York*, finding that plaintiffs had shown "a clear likelihood of proving at trial" that the New York City Police Department ("NYPD") had a practice of making unlawful trespass "stops" outside of certain privately-owned residential buildings in the Bronx.[1]

On August 12, 2013, after a bench trial that followed plaintiffs' withdrawal of claims for money damages and claims against individual defendants, Judge Scheindlin issued an order in *Floyd v. City of New York*, finding that the City had violated the Fourth and Fourteenth Amendments by acting with "deliberate indifference" toward the NYPD's practice of making suspicionless "stops" and "frisks" and by adopting "a policy of indirect racial profiling by targeting racially defined groups" for "stops" and "frisks."[2] That same day, Judge Scheindlin issued an order imposing remedies in *Floyd* and *Ligon* in the form of various "reforms" to the NYPD's

---

[1] *Ligon v. City of New York*, 925 F. Supp. 2d 478, 524 (S.D.N.Y. 2013) ("*Ligon* Liability Order").

[2] *Floyd v. City of New York*, 959 F. Supp. 2d 540, 562 (S.D.N.Y. 2013) ("*Floyd* Liability Order").

"stop and frisk" practices to be overseen by a court-appointed monitor.[3] The City appealed in both cases and sought a stay.

On September 11 and 12, 2013, the Sergeants Benevolent Association ("SBA"), Patrolmen's Benevolent Association of the City of New York ("PBA"), Detectives' Endowment Association, Inc. ("DEA"), New York City Police Department Captains Endowment Association ("CEA"), and Lieutenants Benevolent Association of the City of New York, Inc. ("LBA," and jointly, "police unions" or the "unions") filed notices of appeal and motions to intervene in the District Court. With the exception of the SBA, the police unions moved to intervene in both *Floyd* and *Ligon*. The SBA moved to intervene in only *Floyd*. While the SBA and the PBA appeal the Liability and Remedial Orders, the DEA, the CEA, and the LBA appeal only the Remedial Order.

On October 31, 2013, we granted the City's motion for a stay and ordered that the cases be reassigned from Judge Scheindlin to another district judge.[4] In an opinion, dated November 13, 2013, we explained the reasons for that order.[5] On November 1, 2013, the cases were assigned to United States District Judge Analisa Torres.

Thereafter, an election to fill the various leadership positions in the City's municipal government was held on November 5, 2013,

---

[3] *Floyd v. City of New York*, 959 F. Supp. 2d 668 (S.D.N.Y. 2013) ("Remedial Order").

[4] *Ligon v. City of New York*, 538 F. App'x 101, 103 (2d Cir. 2013).

[5] *Ligon v. City of New York*, 736 F.3d 118 (2d Cir. 2013).

leading, *inter alia*, to the election of a new administration. On November 7, 2013, the police unions, with the exception of the SBA, moved to intervene in the *Floyd* and *Ligon* appeals. On November 12, 2013, the SBA moved to intervene in only the *Floyd* appeal.

On February 21, 2014, on the City's motion, we remanded the causes to Judge Torres for the purpose of exploring settlement and for Judge Torres to address in the first instance the police unions' motions to intervene in the District Court actions.[6] We held in abeyance the police unions' separate motions to intervene in the pending appeals.[7]

On March 4, 2014, the parties informed Judge Torres that they had "reached an agreement in principle for resolving the City's appeals in both *Floyd* and *Ligon*" pursuant to which the City would "substantially compl[y]" with the injunctive relief set forth in Judge Scheindlin's Remedial Order, subject to the parties' application to Judge Torres to limit the term of the court-appointed monitor to three years. In the parties' memorandum of law in support of their joint motion for modification of the Remedial Order, they explained that "[t]he parties have also agreed that when the monitorship ends, the City will authorize the Inspector General of the NYPD . . . to continue to monitor and report to the parties and the public" the NYPD's compliance with the Remedial Order. They stated that "the parties have [also] agreed that, if the City can show it has

---

[6] *Ligon v. City of New York*, 743 F.3d 362, 365 (2d Cir. 2014).

[7] *Id.*

12

maintained substantial compliance with the aforementioned reforms for two years following the termination of the monitorship, the *Floyd* and *Ligon* Plaintiffs will not oppose a City motion to terminate the Court's jurisdiction over *Floyd* and the preliminary-injunction aspect of *Ligon*." With these representations and agreements before her, on July 30, 2014, Judge Torres granted the parties' joint motion to modify the Remedial Order and to enter it as an embodiment of their agreements.

On July 30, 2014, Judge Torres also issued an order denying the police unions' motions to intervene, finding, *inter alia*, that the motions were untimely and that the police unions did not assert a legally protectable interest. Judge Torres held that the motions were untimely because the unions "should have known for years . . . that their members' alleged reputational interests and the Unions' collective bargaining interests were being litigated by parties who were not invested in protecting those interests." Judge Torres held that plaintiffs would "face significant prejudice if previously uninterested late-comers are permitted to prolong the legal wrangling and further delay plaintiffs' hard-won relief," and that "[g]ranting intervention would permit the Unions to infringe upon the City's prerogative to determine policing policy as manifested in its litigation strategy."

Judge Torres further held that the unions' "alleged reputational interests are not legally protectable, do not belong to the unions, or are too conclusory and speculative to be colorable on a motion to intervene." Judge Torres also found that the Remedial

Order does not implicate the unions' collective bargaining interests because it neither concerns "wages," "hours," or "working conditions," nor does it prevent the unions from bargaining over these issues. The police unions appealed.

On August 6, 2014, with the consent of plaintiffs in *Floyd* and *Ligon*, the City moved to voluntarily dismiss its appeals, with prejudice, pursuant to Federal Rule of Appellate Procedure 42(b), stating that the parties "reached an agreement that resolves all the issues raised by the City's appeals in both *Floyd* and *Ligon*, and clears the way for the parties to begin the anticipated remedial process." The motion further requests, "with the consent of all plaintiffs, that the Court direct the expedited issuance of the mandate in each case."[8]

## DISCUSSION

## I.

We have previously explained that "[i]ntervention is a procedural device that attempts to accommodate two competing

---

[8] *See* Fed. R. App. P. 41(b) ("The court may shorten or extend the time [to issue the mandate]."); Fed. R. App. P. 41(d)(1) ("The timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, *unless the court orders otherwise*." (emphasis supplied)). The parties have impressed upon us the need for expedited termination of proceedings in the Court of Appeals, so that their agreement can be implemented promptly—indeed, they have joined in asking for expedited issuance of the mandate. We are also mindful, however, of the need to protect any arguable rights of others to further appellate review. Therefore, as noted, we direct the Clerk of Court to issue the mandate seven days from the date of the filing of this opinion.

policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand," and that, "[i]n resolving the tension that exists between these dual concerns, the particular facts of each case are important, and prior decisions are not always reliable guides."[9] Because of the fact-intensive nature of an intervention decision, we review for "abuse of discretion" a district court's order denying intervention as of right or by permission.[10]

Federal Rule of Civil Procedure 24(a) provides for intervention as of right, stating in relevant part:

> On timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[11]

---

[9] *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994).

[10] *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996). *See In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining term of art "abuse of discretion"), and note 37 *post*.

[11] Fed. R. Civ. P. 24(a) (emphasis supplied).

Federal Rule of Civil Procedure 24(b) provides for intervention by permission, stating in relevant part that: "[o]n timely motion, the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[12]

To be granted intervention as of right *or* by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."[13] We have underscored that a "[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application."[14]

The District Court found that the police unions failed to meet the first and second requirements. We conclude that the District Court acted within its discretion in denying the unions' motions to intervene as of right *and* by permission on these grounds.

### A.

We have explained that "[t]he timeliness requirement is flexible and the decision is one entrusted to the district judge's

---

[12] Fed. R. Civ. P. 24(b) (emphasis supplied).

[13] *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (internal quotation marks omitted).

[14] *Id.* at 241 (internal quotation marks omitted).

16

sound discretion."[15] It "defies precise definition, although it certainly is not confined strictly to chronology."[16] Factors to consider in determining timeliness include: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness."[17]

We conclude that Judge Torres acted within her discretion in finding that, *in the particular circumstances presented here*, these factors weighed against finding that the unions timely moved to intervene.

The unions knew, or should have known, of their asserted interests in their members' reputations and collective bargaining rights well before they filed their motions in September 2013. They argue that they did not become aware of their interests until Judge Scheindlin's August 12, 2013 Liability Order and Remedial Order, which, according to the unions, were "expansive, disparaging, and erroneous" and set forth "sweeping and disruptive" remedies.[18] Regardless of whether this is true, the fact remains that the full scope of these cases and the potential reform measures were readily

---

[15] *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986).

[16] *Pitney Bowes*, 25 F.3d at 70.

[17] *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (internal quotation marks and brackets omitted).

[18] SBA Br. 23.

apparent from years of extensive public filings and intense media scrutiny. These public documents regarding plaintiffs' claims of widespread unconstitutional "stops" and "frisks" and unlawful racial profiling by the NYPD included the *Floyd* and *Ligon* complaints, the class certification orders, the *Ligon* preliminary injunction hearing and order, the *Floyd* summary judgment order, the highly publicized *Floyd* bench trial, extensive briefing on remedies, numerous amicus briefs, and countless news articles.[19] It was widely understood that the views of the incumbent municipal administration were not shared by their likely successors. This plethora of information should have put the unions on notice of the potential political and judicial dangers that these cases posed to their interests well before Judge Scheindlin's August 12, 2013 Liability and Remedial orders.

The unions further argue that, notwithstanding their awareness of their interests, they did not know that the City would not be protecting those interests until the newly-elected New York City Mayor, Bill de Blasio, announced on January 30, 2014 that he

---

[19] *See, e.g.*, Jeffrey Toobin, *A Judge Takes on Stop-and-Frisk*, The New Yorker, May 27, 2013; Mark Hamblett, *Stop–and–Frisk Judge Relishes Her Independence*, New York Law Journal, May 20, 2013. *Compare* Editorial, *When Police Violate the Constitution*, N.Y. Times, Jan. 26, 2013, at A18 ("Earlier this month, the federal judge who is presiding over three lawsuits that challenge different parts of the program issued her harshest ruling yet, putting the city on notice that some aspects of stop and frisk are clearly unconstitutional."), *with* Heather MacDonald, Opinion, *How to Increase the Crime Rate Nationwide*, Wall Street J., June 11, 2013 ("Many New Yorkers watched the two-and-a-half-month trial nervously, concerned that a ruling against the NYPD by U.S. District Court Judge Shira Scheindlin could spell an end to a police practice that helped the city achieve an astonishing drop in violent crime.").

would be dropping the appeals, or at the earliest, when de Blasio took the lead in the mayoral primary election in August 2013 and announced his position against "stops" and "frisks."[20]

As an initial matter, it is far from clear, and the unions have not shown, that the City was *ever* protecting the union members' reputations, much less their collective bargaining rights. Indeed, the interests of employers and their employees frequently diverge, especially in the context of municipal employment, where an employer's interests are often not congruent with the employee's and the employer may argue that the employee was acting outside the scope of his employment.[21] This inherent conflict should have become even more apparent on March 8, 2013, when Judge Scheindlin dismissed the individual defendants in *Floyd*, some of whom were union members, pursuant to the parties' stipulation.

On this record, we cannot say that Judge Torres abused her discretion in finding that the unions should have known that their "interests *might* not be adequately represented" far in advance of any indication that the City might settle the dispute.[22] For the same reasons, the election of Mayor de Blasio and the City's decision to

---

[20] DEA Br. 19; SBA Br. 26.

[21] *See, e.g.*, *Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 907 (2d Cir. 1984), *amended*, 748 F.2d 69 (2d Cir. 1984) ("After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict.").

[22] *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (emphasis supplied).

settle the cases was not an "unusual circumstance" militating in favor of a finding of timeliness.[23]

Contrary to the unions' contention, our decision to leave Judge Torres's order undisturbed will not encourage outside parties to race to intervene in order to protect their interests whenever a government defendant could decide to settle a lawsuit. We hold only that, in the particular and highly unusual facts and circumstances presented here, it should have been readily apparent to the unions that their interests diverged from the City's long before the unions filed for intervention.

Judge Torres also did not err in finding that granting intervention at this late stage would prejudice the existing parties. The police unions moved to intervene after liability and remedies had been adjudged. "This resembles post-judgment intervention, which is generally disfavored because it usually creates delay and prejudice to existing parties . . . and undermines the orderly administration of justice."[24] Allowing intervention at this late

---

[23] *MasterCard*, 471 F.3d at 390. The unions also argue that, under *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396 (1977), the analysis of their motions' timeliness should turn on whether they filed their motions "promptly after the entry of final judgment." In that case, however, the intervenor was an unnamed putative class member who became aware that her interest was unprotected only after the denial of class certification became appealable upon entry of final judgment and the named plaintiffs decided not to appeal. *Id.* at 394. That situation is far afield from the facts and circumstances presented here, where the unions should have known their interests were unprotected well before the Remedial Order was entered.

[24] *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) (internal citations omitted).

juncture would prejudice plaintiffs and the City by postponing resolution of this now-settled dispute and frustrating both parties' desire to promptly engage in agreed-upon reforms. Intervention would disserve the balancing interest of Rule 24 in keeping a "lawsuit from becoming unnecessarily complex, unwieldy or prolonged."[25]

Moreover, we have serious reservations about the prospect of allowing a public-sector union to encroach upon a duly-elected government's discretion to settle a dispute against it. To countenance this sort of practice, in this instance or any other, would amount to condoning a collateral attack on the democratic process; would prejudice the City; would not serve the interests served by Rule 24; and would erode the legitimacy of decisions made by the democratically-elected representatives of the people.[26]

Our reservations deepen when we note the relatively modest interests the unions seek to advance and to which we now turn. In sum, we find that Judge Torres acted well within her discretion in determining that the unions' motions to intervene were untimely.

---

[25] *Pitney Bowes*, 25 F.3d at 69; *see also* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").

[26] *Cf. Hollingsworth v. Perry*, 133 S. Ct. 2652, 2668 (2013) ("We have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to. We decline to do so for the first time here.").

**B.**

We also conclude that Judge Torres acted within her discretion in finding that the unions fail to assert a legally protectable interest—that is, an interest in "the subject of the action" sufficient to grant them the benefits and burdens of status as a party.[27]

We have made it clear that, for an interest to be "cognizable" under Rule 24, it must be "direct, substantial, and legally protectable."[28] In other words, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."[29]

The unions assert two interests: restoring the reputations of their members and preventing the erosion of their collective bargaining rights.

---

[27] Fed. R. Civ. P. 24(a).

[28] *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quotation marks omitted).

[29] *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (quotation marks omitted).

**1.**

Judge Torres properly held that the unions' interest in their members' "reputations" is too indirect and insubstantial to be "legally protectable."[30]

The unions argue, for example, that the Liability Order "accuses the entire NYPD of [constitutional] violations, and identifies sergeants by name, asserts that they are untruthful, and concludes that numerous stops that they supervised, approved, or conducted broke the law."[31] They argue that, because the Liability Order "brand[s] them lawbreakers and unconstitutional actors," it "adversely affect[s] the careers and lives" of their members and "cast[s] doubt on the ability of other members to perform their duties effectively while avoiding similar accusations in the future, which in turn affects officer and public safety."[32]

Judge Torres did not err in finding that the unions had submitted no evidence to substantiate their claims of reputational harm. Aside from their own assertions, there was no evidence in the record showing that the union members' careers had been tarnished,

---

[30] *Bridgeport Guardians*, 602 F.3d at 473.

[31] SBA Br. 31. More specifically, the unions argue that the Liability Order "derogates the general practices and performance of NYPD sergeants, including findings that assert the creation of 'a culture of hostility' perpetuated by [a NYPD sergeant]; inadequate supervision of stops by [another NYPD sergeant]; insufficient record-keeping by [another NYPD sergeant]; and various examples of allegedly poor supervision by sergeants generally." *Id.* at 32.

[32] SBA Br. 35, 37.

that their safety was in jeopardy, or that they had been adversely affected in any tangible way.

Moreover, that these lawsuits principally targeted the City and not individual police officers became clear when plaintiffs withdrew their claims against the individual officers in *Floyd* in March of 2013. Any indirect reputational effect on individual police officers is too "remote from the subject matter of the proceeding" to be legally protectable.[33]

**2.**

Judge Torres also properly found that the unions' interest in protecting their collective bargaining rights is similarly too remote from the subject matter of the Remedial Order to be legally protectable.

The Remedial Order requires changes to the NYPD's "stop-and-frisk" policies, procedures, supervision, training, and monitoring. These changes fall squarely within the "management rights" provision of New York City Administrative Code § 12–307(b), which exempts from mandatory collective bargaining certain

---

[33] *Brennan*, 260 F.3d at 129. The unions also argue that under *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), a decision by a sister Circuit that is not binding in this Circuit, they have an interest in the merits of a litigation that alleges constitutional violations by police officers. In that case, however, a proposed consent decree had not yet been entered, and the police officers were still subject to individual liability on allegations of "misconduct and corruption." *Id.* at 396. The interests of individual police officers, and the police force generally, in *City of Los Angeles* were far more direct and substantial than the reputational interest asserted by the unions here.

managerial prerogatives including "the methods, means and personnel by which government operations are to be conducted."[34] Under § 12–307(b), "[i]t is the right of the city . . . [to] exercise complete control and discretion over its organization and the technology of performing its work."

The unions have not shown in any meaningful way how the reforms set forth in the Remedial Order, which embodies an agreement between the City and plaintiffs, would have any "practical impact" on "questions of workload, staffing and employee safety" that are within the scope of the unions' collective bargaining rights.[35] To the extent any provision of the settlement agreement might be said to affect collective bargaining rights, no provision in the agreement prevents the unions from collectively bargaining. Indeed, the agreement of the parties—that is, the Remedial Order— expressly invites "NYPD personnel and representatives of police organizations" "to be heard in the reform process," and the City informed us at oral argument that it does not object to appropriate collective bargaining to the extent that issues raised by the settlement agreement would normally be subject to collective bargaining.[36]

---

[34] N.Y.C. Admin. Code § 12–307(b).

[35] *Id.*

[36] *Floyd*, 959 F. Supp. 2d at 686. We disagree with Judge Torres's overly broad statement that the unions' collective bargaining rights are not, and cannot be, "implicated where the unilateral changes at issue arise from a court order." However, that apparently unsupported proposition of law was not the basis of her otherwise sound holding.

On this record, we find that Judge Torres acted well within her discretion in concluding that the unions do not assert an interest that the law seeks to protect.[37]

## C.

For the foregoing reasons, we conclude that Judge Torres acted within her discretion in denying the unions' motions as of right *and* by permission.[38] For substantially the same reasons, we deny the unions' motions to intervene in the appeals.[39]

---

[37] We have repeatedly observed that the somewhat clunky term "abuse of discretion" is a term of art, and does not necessarily mean the district court has engaged in "abusive" conduct. More accurately, "[a] district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, . . . or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d at 132 (internal quotation marks, citations, and brackets omitted); *see generally* Joseph T. Sneed, *Trial–Court Discretion: Its Exercise by Trial Courts and Its Review by Appellate Courts*, 13 J. App. Prac. & Process 201, 202, 207 (2012) (commentary by the late U.S. Circuit Judge Joseph T. Sneed, a former Dean of the Duke Law School, law professor at Stanford Law School, and Deputy U.S. Attorney General, on the several possible meanings of "abuse of discretion").

[38] *See Catanzano*, 103 F.3d at 234 ("[A] denial of permissive intervention has virtually never been reversed.").

[39] *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965) (noting that "policies underlying intervention" under Federal Rules of Civil Procedure "may be applicable in appellate courts").

## II.

Federal Rule of Appellate Procedure 42(b) provides that "[a]n appeal may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court."[40]

Although we have affirmed Judge Torres's denial of the unions' motion to intervene, the merits of the underlying Liability and Remedial Orders are complex and controversial, and they indisputably implicate serious questions of broad constitutional importance, as well as difficult evidentiary questions concerning the use of statistical evidence.

However, because the City has decided to exercise its right to settle these cases on the basis of an agreement to comply with the Remedial Order, we have no occasion to review the merits of either Judge Scheindlin's liability determination and challenges to the nature of plaintiffs' proof, or the remedies she thereafter ordered. The liability determinations are not part of the settlement and the Remedial Order has been accepted solely as the basis for the parties' settlement. Thus, nothing in this opinion should be construed as accepting or rejecting any part of the Liability and Remedial Orders issued by Judge Scheindlin.

While the parties' settlement may not be formally designated a "consent decree" because it finds its basis in a post-trial judicial order, we understand it—and the parties confirmed this

---

[40] Fed. R. App. P. 42(b).

27

understanding at oral argument—to operate as such.[41] We emphasize, therefore, that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."[42] Injunctions in so-called institutional reform litigation "often remain in force for many years, and the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment."[43] As the Supreme Court has observed, "[i]f a federal consent decree is not limited to reasonable and necessary implementations of federal law, it may improperly deprive future officials of their designated legislative and executive powers."[44] As the parties agreed at oral argument and have stated in their joint memorandum of law pertaining to the settlement, the Remedial Order adopted by the City in settlement of these cases is projected to expire in five years upon a showing of substantial compliance by the City, and the monitor's oversight will end in three years upon the same showing.[45] Moreover, the District

---

[41] The Supreme Court has described a "consent decree" as "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). We note that Judge Torres's comment that the Remedial Order and the parties' settlement are "not a negotiated settlement or consent decree where the parties have voluntarily ended their legal dispute" is not entirely accurate or relevant in the circumstances.

[42] *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932).

[43] *Horne v. Flores*, 557 U.S. 433, 448 (2009).

[44] *Id.* at 450 (internal quotation marks, brackets, and citations omitted).

Court remains open to entertain proposed modifications to the presently agreed-upon settlement.

In the particular circumstances presented here, the City's motion for voluntary dismissal of the appeals, with prejudice, must be granted.

## CONCLUSION

For the reasons set forth above, Judge Torres's July 30, 2014 decision is **AFFIRMED** as being an appropriate exercise of her discretion, the police unions' motions to intervene in the appeals are **DENIED**, the City's motion for voluntary dismissal of the appeals with prejudice is **GRANTED**, and the causes are **REMANDED** for such further proceedings before Judge Torres as may be appropriate in the circumstances. The mandate shall issue seven days from the date of the filing of this opinion.

Nothing that we have written here, or that the parties have suggested, should foreclose any reliance by the unions on collective bargaining rights afforded to them under the Labor Management Relations Act and state and local law. Moreover, in view of the possible relevance of the unions' perspectives in any ongoing District Court proceedings,[46] nothing in this opinion should be

---

[45] *See* Joint App'x A-1200.

[46] *See Floyd*, 959 F. Supp. 2d at 686 (stating that "NYPD personnel and representatives of police organizations" are invited "to be heard in the reform process"); *see also* text at note 36.

construed to inhibit the District Court from considering the interests of the unions, either as *amici curiae*, or on such other terms as the District Court may deem appropriate.